IN THE SUPREME COURT OF THE STATE OF DELAWARE

|  |  |
|---|---|
| In the Matter of ELIZABETH BOYD, a disabled person. | § <br> § No. 272, 2014 <br> § <br> § Court Below: Court of Chancery <br> § of the State of Delaware, <br> § C.M. No. 16474-K-VCN <br> § |

Submitted: July 7, 2014
Decided: August 11, 2014

Before **STRINE**, Chief Justice, **HOLLAND** and **RIDGELY**, Justices.

## **O R D E R**

This 11th day of August 2014, upon consideration of the appellant's opening brief, the appellee's motion to affirm, and the record in this case, it appears to the Court that:

(1) The appellant, Charles T. Conaway, III, filed this appeal from the April 30, 2014 opinion and order of the Court of Chancery appointing Senior Partner, Inc. to act as guardian of the property of Elizabeth Boyd. Boyd is Conaway's mother. The appellee, Delaware Hospital for the Chronically Ill ("DHCI"), has moved to affirm the Court of Chancery's judgment on the ground that it is manifest on the face of the opening brief that the appeal is without merit.[1] We agree and affirm.

---

[1] Supr. Ct. R. 25(a). DHCI filed the motion to affirm in response to Conaway's request for a stay pending appeal, which was docketed as his opening brief. The request for a stay was virtually

(2) The record reflects that Conaway has had durable power of attorney for Boyd since 1999. In 2003, Conaway executed an Irrevocable Trust Agreement (the "Trust Agreement") as trustee of the trust (the "Trust") and as his mother's attorney in fact.[2] The Trust Agreement states that the purpose of the Trust is to make Boyd eligible for Medicaid.[3] According to the Trust Agreement, Boyd's monthly social security benefits and two monthly International Brotherhood of Electrical Workers pension payments are to be transferred to the Trust.[4] After certain designated monthly distributions, the remaining monthly income is to be paid to the nursing facility at which Boyd received care.[5] Upon Boyd's death, the trustee is required to distribute the entire Trust corpus, up to an amount equal to the total amount of medical assistance paid to Boyd, to the State of Delaware.[6] If the

---

identical to the opening brief Conaway subsequently filed, so we have treated the motion to affirm as if it was filed in response to the document Conaway titled as his brief.

[2] Based on the record, it appears that DHCI was not aware of the Trust Agreement until Conaway presented it at the guardianship hearing.

[3] Respondent's Exhibit 2 § 2. To qualify for Medicaid, an individual may establish a Miller Trust and place their income in that trust. 16 *Del. Admin. C.* § 5100-20400.11.1. If the trust meets all of the requirements for exemption (for example, the trust must be irrevocable and only contain income), then the trust corpus is not counted as available to the individual in determining whether than individual qualifies for Medicaid. 16 *Del. Admin. C.* § 5100-20400.11.2.

[4] Respondent's Exhibit 2 § 1.

[5] *Id.* § 3.

[6] *Id.* § 4.

Trust corpus exceeds the amount of medical assistance paid to Boyd by the State, then the excess will be paid to Boyd's estate.[7]

(3)   Boyd was a patient at the Delaware Psychiatric Center ("DPC") from 2003 until June 2010.  The DPC received Boyd's monthly social security benefits. After a boiler explosion at the DPC building where Boyd lived, she was transferred to DHCI in July 2010.

(4)   After Boyd's admission, DHCI tried to work with Conaway in order to obtain Medicaid for Boyd.  DHCI's daily rate for non-Medicaid patients is over $500 a day, so DHCI tries to set patients up with Medicaid promptly.  The Medicaid office requested additional information concerning Boyd's income, including a survivor's pension she was receiving, and DHCI asked Conaway to provide the requested information.  He did not do so, and the Medicaid application process could not be completed.

(5)   DHCI also requested that Conaway arrange for Boyd's pension payments to be applied toward Boyd's DHCI bill.  Conaway arranged for Boyd's social security benefits ($1,213 a month) to apply to Boyd's DHCI bill, but was unwilling to arrange for DHCI to receive the pension payments.  Throughout 2010 and 2011, DHCI asked Conaway to arrange for payment of the balance of Boyd's bill.  Conaway took no action.

---

[7] *Id.*

(6) On March 26, 2012, DHCI filed a petition for appointment of Senior Partner, Inc., a professional guardian, as a permanent guardian of Boyd's property in the Court of Chancery. The petition stated that Boyd suffered from, among other things, dementia, and that appointment of a guardian was necessary in order to handle Boyd's financial needs. William C. Wagner, II, Esquire was appointed attorney *ad litem* for Boyd. Conaway objected to the guardianship petition and a contested hearing was scheduled for November 2, 2012. The attorney *ad litem* submitted reports recommending the appointment of Senior Partner, Inc. or another court-supervised guardian as guardian of Boyd's property and that Conaway continue to be responsible for decisions concerning Boyd's medical care.

(7) At the November 2, 2012 hearing, the master heard testimony from Barbara Brogan, the DHCI administrator for financial determination. Conaway chose not to testify, but made an opening and closing statement and extensively cross-examined Brogan. At the conclusion of the hearing, the master issued a draft oral report. The master found that Boyd suffered from dementia, Conaway was a fiduciary as a result of the 1999 power of attorney and the Trust Agreement, Conaway was responsible for arranging payment of his mother's bills, and Conaway breached his fiduciary duties by not cooperating with the Medicaid application process and by not using the pension payments for his mother's care. The master recommended appointment of Senior Partner, Inc. as guardian of

4

Boyd's property, removal of Conaway as trustee of the Trust, and appointment of Senior Partner as trustee of the Trust.

(8) After the parties filed briefs on Conaway's exceptions to the master's oral draft report, the master issued a final report on July 16, 2013. The parties then submitted briefs to the vice chancellor. Following *de novo* review under Court of Chancery Rule 144, the Court of Chancery adopted the master's findings of fact and conclusions of law. The Court of Chancery entered an order appointing Senior Partner, Inc. as guardian of Boyd's property and, to the extent there was a valid irrevocable trust, removing Conaway as trustee and appointing Senior Partner, Inc. as trustee. Conaway filed this appeal and sought a stay pending appeal of the Court of Chancery's order. The Court of Chancery denied Conaway's request for a stay on May 21, 2014.

(9) When reviewing a decision of the Court of Chancery, this Court reviews rulings of law *de novo*.[8] This Court will disturb factual findings only when such findings are clearly wrong.[9] Under 12 *Del. C.* § 3901, the Court of Chancery may appoint a guardian for the property of a person who "[b]y reason of mental or physical incapacity is unable properly to manage or care for their own person or

---

[8] *Kahn v. Household Acquisition Corp.*, 591 A.2d 166, 175-76 (Del. 1991).

[9] *Levin v. Smith*, 513 A.2d 1292, 1301 (Del. 1986).

property, or both, and, in consequence thereof, is in danger of dissipating or losing such property, or of becoming the victim of designing persons. . . ."[10]

(10) The parties do not dispute that Boyd is disabled or that Boyd's pension income has not been applied to Boyd's medical expenses at DHCI. Instead, Conaway argues in his opening brief that: (i) DHCI did not prove that the pensions belonged to the State rather than to Conaway; (ii) the Medicaid fraud unit and Office of Public Guardian did not pursue the case; (iii) DPC never demanded that Boyd's pensions apply to the cost of her care and Conaway was deprived of due process when DHCI sought application of the pension payments to Boyd's bills; (iv) Conaway's character was assassinated in the proceedings below and the master cited two inapplicable cases in her final report; and (v) he was denied due process when the trial court denied his motion to stay pending appeal without giving Conaway an opportunity to respond to DHCI's opposition to his motion to stay.[11] These arguments are without merit.

(11) Conaway's contention that DHCI failed to prove that the pensions belong to the State, rather than Conaway, misses the point. Boyd, not Conaway or

---

[10] 12 *Del. C.* § 3901(a)(2).

[11] To the extent Conaway raised other issues below, his failure to argue the merits of those issues in the body of his opening brief constitutes a waiver. *Ploof v. State*, 75 A.3d 811, 823 (Del. 2013); *Murphy v. State*, 632 A.2d 1150, 1152 (Del. 1993). The body of Conaway's opening brief consists of the two and a half pages of arguments he submitted with his signature, not the 132 pages of letters, emails, and Court of Chancery filings attached to his arguments. Supr. Ct. R. 14(b) (defining contents of opening and answering briefs).

the State, is the current beneficiary of the pensions.[12] As Boyd's attorney-in-fact, Conaway had a duty of loyalty to Boyd and an obligation to act in Boyd's best interest.[13] It is undisputed that Boyd is receiving care at DHCI and that her social security income does not cover the entire cost of that care. Despite Conaway's power of attorney and the terms of the Trust Agreement, Conaway has kept the pension income for himself, rather than apply that income, which belongs to Boyd, to payment of Boyd's medical care. Conaway also failed to cooperate with efforts to obtain Medicaid for Boyd. DHCI sought appointment of a guardian of Boyd's property so that a guardian could make decisions concerning the property that were in Boyd's best interests (such as applying for Medicaid and using the pension income for payment of Boyd's care). Conaway cites no authority in support of the proposition that a fiduciary may keep the income of a disabled relative for themselves and leave the disabled relative unable to pay for medical care. That is for good reason: the proposition is inconsistent with the best interests of vulnerable wards who need their assets deployed to ensure that they receive appropriate care. Accordingly, the trial court did not err in concluding that Conaway breached his fiduciary duties and that appointment of Senior Partner, Inc.

---

[12] Based on the record, it appears that the pensions originally belonged to Boyd's husband, who was Conaway's stepfather.

[13] *Lingo v. Lingo*, 3 A.3d 241, 244 (Del. 2010); *Shock v. Nash*, 732 A.2d 217, 225 (Del. 1999).

7

as guardian of Boyd's property and as trustee of the Trust was necessary to protect Boyd.

(12) Conaway fails to explain how the Medicaid fraud unit's decision not to pursue a case or the Office of the Public Guardian's ("OPG") decision not to seek guardianship of Boyd's property is relevant to this matter. Applications for guardianships under 12 *Del. C.* § 3901 cover a wide range of situations involving vulnerable persons; they are not limited to cases involving Medicaid fraud or those brought by the OPG. If Conaway is trying to suggest that those decisions undermine DHCI's guardianship petition, nothing in the record reflects that the Medicaid fraud unit or OPG concluded that Conaway was handling his mother's financial affairs in her best interests. Thus, whatever decisions were made by the Medicaid fraud unit and the OPG, those decisions were not a basis for the Court of Chancery to reject DHCI's petition for a guardianship. The Court of Chancery acted properly by focusing its decision, as it should have, on the record evidence presented to it.

(13) Conaway's argument that DHCI was precluded from seeking application of Boyd's pension income to its bills because DPC was satisfied with Boyd's social security income also lacks merit. There is no evidence in the record concerning the cost of Boyd's care at DPC or showing that DPC even knew Boyd was entitled to pension income Conaway kept for himself. DHCI has cared for

8

Boyd since 2010 and is entitled to payment for Boyd's care. The pension income belongs to Boyd, not Conaway, and it is in Boyd's best interests to pay for the medical care that she receives. As far as Conaway's complaint that he was deprived of due process when DHCI requested Boyd's pension income, DHCI informed Conaway by July 2010 that all of Boyd's monthly income was considered a resource for payment of her monthly bill. Conaway chose to ignore DHCI's repeated requests for payment of Boyd's bills and chose not to cooperate with efforts to obtain Medicaid for Boyd. He also chose not to find another nursing facility that would care for his mother in exchange for no more than her monthly social security benefits. Accordingly, Conaway's arguments concerning the apparent differences in the payment expectations of DPC and DHCI lack merit.

(14) Turning to Conaway's complaints of character assassination and the citation of two inapplicable cases in the proceedings below, Conaway does not dispute the key factual finding of the Court of Chancery. Namely, Conaway kept his mother's pension income for himself, rather than arrange for application of that income to his mother's DHCI bill. As far as the citation of *State v. Brown*[14] and *Weber v. Weber*[15] in the master's final report, both of those cases support the propositions for which they were cited. The master cited *Brown* in support of the

---

[14] 1991 WL 1285795 (Del. Super. Apr. 15, 1991).

[15] 1988 WL 93433 (Del. Aug. 5, 1988).

principle that it is the duty of the court to exercise control over the examination of witnesses and presentation of evidence and *Weber* in support of the principle that a *pro se* party is responsible for knowing the rules of the court and the law concerning her case.[16] The factual differences between those cases and this case did not make it inappropriate for the master to cite those cases accurately in support of particular legal principles. Thus, the trial court did not err in adopting and confirming the findings and conclusions of the master. It is therefore manifest from the opening brief that this appeal is without merit and should be dismissed.

(15) Finally, there is no merit to Conaway's complaint that he was deprived of due process in connection with his request for a stay pending appeal because he did not have an opportunity to file a reply. The trial court considered Conaway's request for a stay and DHCI's opposition to the request. The Court of Chancery rules do not provide that a party filing a motion is automatically entitled to file a reply. In light of the record and the requirements for a stay pending appeal,[17] there was nothing Conaway could have raised in a reply that would have

---

[16] *Brown*, 1991 WL 1285795, at *2; *Weber*, 1988 WL 93433, at *2.

[17] In deciding whether to grant a stay, a court must: (i) make a preliminary assessment of the movant's likelihood of success on appeal; (ii) assess whether the movant will suffer irreparable harm if the stay is not granted; (iii) assess whether any other interested party will suffer substantial harm if the stay is granted; and (iv) consider whether the public will be harmed if the stay is not granted. *Kirpat, Inc. v. Delaware Alcoholic Beverage Control Comm'n*, 741 A.2d 356, 357 (Del. 1998). Even if an appellant can show these factors weigh in favor of a stay, the appellant must post security sufficient to protect the appellee if the appeal is unsuccessful. Del. Const. art. IV, § 24; Supr. Ct. R. 32(c).

led to a different result. This complaint is also moot in light of this Court's affirmance of the Court of Chancery's judgment.

NOW, THEREFORE, IT IS ORDERED that the motion to affirm is GRANTED and the judgment of the Court of Chancery is AFFIRMED. Conaway's request for a stay pending appeal is DENIED as moot.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice

11